**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ISAAC KENNETH FULLMAN,** | : | **Civil No. 4:14-CV-1740** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Brann)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THOMAS KING KISTLER, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

Albert Einstein once said that doing the same thing over and over again and expecting different results is the highest form of human folly. We are reminded of Einstein's wisdom as we consider the instant case, which come before the Court for a statutorily mandated screening review. Isaac Fullman is a familiar, if unsuccessful, litigant before this Court. The instant complaint is also a familiar document since it reprises and repackages allegations that were originally made in nine prior cases[1]

---

[1]Fullman v. Patton Township Police Dep't., 4:12-CV-1879; Fullman v. Penn State University Police Dep't., 4:12-CV-1880; Fullman v. Centre County District Attorney's Office, 4:12-CV-1881; Fullman v. State College Borough Police Dep't., 4:12-CV-1882; Fullman v. Ferguson Township Police Dep't., 4:12-CV-1883; Fullman v. Centre County District Attorney's Office, 4:12-CV-2061; Fullman v. Centre County Prison, 4:12-CV-2063; Fullman v. Blaniak, 4:12-CV-2233; Fullman v. Centre County Courthouse, 4:13-CV-325.

filed by this *pro se* plaintiff.  These cases, which have all been dismissed by this Court, all involved a common nucleus of operative facts.  In each instance the plaintiff alleged that his civil rights were violated in connection with a state criminal prosecution in Centre County for DUI and traffic offenses, or some other summary offense.  Yet, in each instance, Fullman revealed that he was convicted of the criminal charges which lie at the heart of these lawsuit.  In fact, in some instances Fullman recited that he pleaded guilty to these offenses.

Each of these prior complaints was screened by this Court and, in a series of reports and recommendation, we recommended that the complaints be dismissed for failure to state a claim upon which relief may be granted, citing multiple independent grounds for dismissal.  First, in many instances, the plaintiff sought to bring claims against individual or institutional parties who could not be sued.  Second, a number of Fullman's claims attempted to re-litigate criminal cases in which he had been convicted, something the plaintiff may not do in the guise of a federal civil rights lawsuit.  In addition, many of the claims seemingly advanced by Fullman in these nine different complaints were legally flawed in a variety of ways.  The district court adopted these recommendations, and ordered all of Fullman's nine prior complaints dismissed.

Undeterred, Fullman has now filed a new complaint, albeit one which simply repeats the claims that were previously considered, rejected, and dismissed by this

court.  Along with his complaint, Fullman has also filed a motion for leave to proceed *in forma pauperis*.  (Doc. 2.)  For the reasons set forth below, we will GRANT the motion for leave to proceed *in forma pauperis*, but recommend that this complaint be dismissed.

## II.    Discussion

### A.    Screening of *Pro Se* Complaints–Standard of Review

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which  seek redress against government officials.  See 28 U.S.C. § 1915(e)(2)(B)(ii).  Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel,</u>

<u>Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss."

<u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

<u>Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual

5

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these benchmarks, Fullman's latest *pro se* complaint fails for a host of reasons, as described below.

B.  **To the Extent That Fullman Seeks to Re-litigate Claims That Were Previously Dismissed, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters**

At the outset, Fullman's latest complaint appears to attempt to re-litigate matters which has previously been conclusively resolved by the federal courts. Specifically, Fullman's latest complaint pursues claims previously presented in the nine prior lawsuits filed by this plaintiff which were dismissed by this Court.  In conducting an initial screening assessment of this aspect of Fullman's latest complaint: " We have the authority to apply the doctrine of claim preclusion or res judicata sua sponte.  Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); Ezekoye v. Ocwen Federal Bank FSB, 179 F.App'x 111, 114 (3d Cir.2006) (non precedential).

[and] can . . . invoke *res judicata* 'if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' Gleash, 308 F.3d at 760." Guider v. Mauer, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009).

In our view, upon a preliminary screening review of this, Fullman's latest lawsuit, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint.. Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

8

Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co.

v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made by Fullman in the instant complaint, the legal requisites for issue preclusion are fully satisfied, since: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore, these claims should be dismissed.

## C.   Fullman Still May Not Bring a Civil Rights Action for False Arrest Based Upon What Are Presently Valid Criminal Convictions and Sentences

In addition, this latest *pro se* complaint fails because it continues to proceed on the flawed legal premise that Fullman may bring a civil rights action premised on claims arising out of valid state criminal convictions which he admits have not otherwise been set aside or overturned.

This he cannot do.  Quite the contrary, it is well-settled that an essential element of a civil rights malicious prosecution claim is that the underlying criminal case must have been terminated in favor of the civil rights claimant.  Therefore,

where, as here, the civil rights plaintiff brings a malicious prosecution or false arrest

claim based upon a state case that resulted in a conviction, the plaintiff's claim fails

as a matter of law.  The United States Court of Appeals for the Third Circuit has aptly

observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates
> a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994)
> (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299,
> 305(1986) (internal quotation marks omitted)).  Given this close relation
> between § 1983 and tort liability, the Supreme Court has said that the
> common law of torts, "defining the elements of damages and the
> prerequisites for their recovery, provide[s] the appropriate starting point
> for inquiry under § 1983 as well." Heck, 512 U.S. at 483(quoting Carey
> v. Piphus, 435 U.S. 247, 257-58,(1978)).  The Supreme Court applied
> this rule in Heck to an inmate's § 1983 suit, which alleged that county
> prosecutors and a state police officer destroyed evidence, used an
> unlawful voice identification procedure, and engaged in other
> misconduct. In deciding whether the inmate could state a claim for those
> alleged violations, the Supreme Court asked what common-law cause of
> action was the closest to the inmate's claim and concluded that
> "malicious prosecution provides the closest analogy ... because unlike
> the related cause of action for false arrest or imprisonment, it permits
> damages for confinement imposed pursuant to legal process." Heck,
> 512 U.S. at 484.  Looking to the elements of malicious prosecution, the
> Court held that the inmate's claim could not proceed because one
> requirement of malicious prosecution is that the prior criminal
> proceedings must have terminated in the plaintiff's favor, and the inmate
> in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

Thus, "our precedents are clear that § 1983 plaintiffs alleging arrest and

prosecution absent probable cause may bring malicious prosecution claims under the

Fourth Amendment, but are entitled to relief only if they are innocent of the crime for

which they were prosecuted.  Hector v. Watt, 235 F.3d 154, 156 (3d Cir.2000)."

Washington v. Hanshaw, 13-1116, 2014 WL 67887 (3d Cir. Jan. 9, 2014) Therefore,

"a plaintiff claiming malicious prosecution must prove *actual* innocence as an

element of his *prima facie* case."  Steele v. City of Erie, 113 F. App'x 456, 459 (3d

Cir. 2004).

In this case it is evident from Fullman's complaint that his prior state criminal

prosecution did not terminate favorably for him, since he was convicted in this state

case and served a sentence as a result of this conviction, and subsequent parole and

probation revocations.  Since "one requirement of malicious prosecution is that the

prior criminal proceedings must have terminated in the plaintiff's favor."  id., the

immutable fact of Fullman's conviction presently defeats any federal civil rights

claims based upon false arrest or malicious prosecution in this state case, and compels

dismissal of these claims.  In short, this complaint is based upon the fundamentally

flawed legal premise that Fullman can sue the state for malicious prosecution even

though he stands convicted on his own guilty plea of the crimes charged against him.

Since this premise is simply incorrect, Fullman's complaint fails as a matter of law.

### D.   Many of the Parties Named In the Amended Complaint Are Not Proper Party-Defendants

Furthermore, it appears that Fullman continues to name parties as defendants

that he has been advised may not be sued for federal civil rights violations.  Indeed,

Fullman's latest complaint is replete with references to improper party-defendants.

For example, it is well-settled that a criminal defendant may not sue prosecutors for their act of filing charges against him since such conduct is cloaked in immunity from civil liability.   Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Similarly, §1983 expressly limits liability to *persons* who violate constitutional rights, a limitation that courts have construed as not reaching county jails as institutions.  In short, " the 'County Jail' is not a proper defendant in this § 1983 case[], because it is not a 'person.'  See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J.1989)(stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (D.C.Pa.1976); see also Marsden v. Federal BOP, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a 'person' under § 1983); McCoy v. Chesapeake Correctional Center, 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a 'person' under § 1983)."   Crooks v. Passaic County Sheriff's Dep't/Jail, CIV. 07-0092 (FSH), 2007 WL 923330 (D.N.J. Mar. 26, 2007).

Likewise, a local police department may not be a proper institutional defendant in this action since police departments serve only as an administrative arm of a

13

municipality, and it is a municipality through which any liability must flow to the police department. A police department is not a "person" for purposes of §1983 and is not a proper defendant in a §1983 action. Golya v. Golya, 2007 U.S. Dist. LEXIS 58093, *29-30 (M.D. Pa. 2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under §1983); Wivell v. Liberty Township Police Dept., 2007 U.S. Dist. LEXIS 54306, *5-6 (M.D. Pa. 2007) (explaining that police department not subject to suit in a §1983 action).

Complaints under §1983 also require a showing of state action, a requirement which means that Fullman may not sue his own former attorney under this statute since it is well-settled that the conduct of an attorney, representing a client in a state criminal case, does not by itself rise to the level of state action entitling a state prisoner to bring a federal civil rights actions against his own prior counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Therefore, in the absence of some further well-pleaded facts, Fullman may not convert his dissatisfaction with the performance of his state criminal defense counsel into a federal civil rights lawsuit.

In addition, as we have previously explained to Fullman, he may not sue supervisory police and prison officials without alleging proof of direct involvement

14

in wrongdoing by these officials.  It is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

Here, with respect to many supervisory defendants named in the amended complaint, Fullman does not allege that the defendants directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it.  Rather, Fullman simply lists these supervisory officials in the amended complaint without making any factual averments about their conduct in the body of his complaint, a cursory style of pleading is plainly inadequate to state a claim and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x

519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

In addition, longstanding common law immunities also apply here and prevent Fullman from maintaining this civil action against any state judicial official. Therefore, to the extent that Fullman endeavors to name court judges in this complaint those officials are entitled to judicial immunity for their actions in these state criminal proceedings since a judge is absolutely immune from personal liability for any judicial acts, including presiding over a criminal case or sentencing a defendant.  See, e.g., Arsad v. Means, 365 F.App'x 327 (3d Cir. 2010);  Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000).

Finally, pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.  Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system.  These state court agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various county common pleas courts which are defined by statute as institutions of state government.  See, e.g., Walters v. Washington County,

16

No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); <u>Van Tassel v. Lawrence</u>

<u>County Domestics Relations Section</u>, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept.

22, 2009). Therefore, absent an express waiver of the immunity established by the

Eleventh Amendment, all of these court agencies, and their employees who are sued

in their official capacities, are absolutely immune from lawsuits in federal court.

### E. **Fullman's Complaint Should be Dismissed With Prejudice**

All of these matters have been previously explained to Fullman by this Court

but apparently has not been understood by the plaintiff because he has persisted in

renewing these invalid claims against inappropriate party-defendants. We recognize

that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to

amend a complaint before the complaint is dismissed in its entirety, <u>See Fletcher-</u>

<u>Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless

granting further leave to amend would be futile or result in undue delay. <u>Alston v.</u>

<u>Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Since Fullman's latest *pro se* complaint

still does not comply with these pleading rules, and does not contain sufficient factual

recitals to state a claim upon which relief may be granted, these allegations should be

dismissed under 28 U.S.C. § 1915A, and Rule 12(b)(6) of the Federal Rules of Civil

Procedure. Moreover, in this case, the Court has previously provided the plaintiff

with ample opportunities to amend his prior pleadings, but to no avail.

Instead, this latest complaint still fails to state a viable civil rights cause of action, and actually repeat assertions that were previously found to be legally insufficient.  Since the plaintiff has been afforded ample opportunity to correct the deficiencies identified in his nine prior complaint, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of this, his latest civil complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is recommended that this latest complaint be dismissed with prejudice.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, we will GRANT the motion for leave to proceed *in forma pauperis*, (Doc. 2.), but IT IS RECOMMENDED that the plaintiff's complaint should be dismissed without further leave to amend.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set

18

forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th day of September, 2014.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

19